# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS CONTRERAS GALVAN, | 1:09-cv-01713 GSA HC |
|     Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |
| R. E. BARNES, | |
|     Respondent. | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Kathleen A. McKenna, Esq., of the Office of the California Attorney General. The parties have voluntarily consented to exercise of magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on September 14, 2007, of attempted murder (Cal. Penal Code §§ 664/187(a)), kidnaping (Cal. Penal Code § 207), battery on a spouse (Cal. Penal Code § 273.5(a)), and making a criminal threat (Cal. Penal Code § 422). Petitioner was sentenced to serve an indeterminate term of seven years to life with the possibility of parole, plus a term of one year and eight

---

[1] This information is derived from the documents lodged by Respondent with the answer.

1

months. A five-year term imposed for kidnaping was stayed.

Petitioner filed a timely notice of appeal. On September 23, 2008, the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"), modified the sentence to reflect a term of life with the possibility of parole plus one year. The eight month sentence on count five was stayed. The court affirmed the judgment in all other respects.

On April 15, 2009, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. The petition was denied on August 26, 2009, with citation to In re Waltreus, 62 Cal.2d 218 (1965).

On September 21, 2009, Petitioner filed the instant federal habeas petition. The petition raises the following claim for relief: 1) Petitioner contends the trial court erred in imposing consecutive rather than stayed sentences on counts three and five. On December 18, 2009, Respondent filed an answer to the petition. Petitioner did not file a traverse.

## STATEMENT OF FACTS[2]

Sylvia Chavarria testified that on April 4, 2007 (April 4), she and appellant went together to the home of appellant's parents. Appellant and Chavarria were dating at the time, they at one time lived together and they have a child together.

Chavarria waited outside, at appellant's direction, while appellant entered his parents' house. When appellant came back out, approximately 30 minutes later, he was angry and appeared to be under the influence of methamphetamine.

Chavarria was waiting "[o]n the side" of the house. Appellant grabbed her by the hood of her sweatshirt, held a nail to her neck and "dragged" her to an alley behind the house. There, she found herself lying on the ground on her back, with appellant "leaning over [her][,] choking [her]." Chavarria lost consciousness "for a second at least." She regained consciousness, possibly as a result of appellant slapping her, at which point appellant "forced [her] to walk to the park," "[b]y holding a nail to [her] neck and threatening [her]." Appellant "told [Chavarria] not to scream or try to run or else he would stab [her]."

After some period of time, the length of which Chavarria was not able to estimate, she and appellant arrived at "the rock embankment of the river...." There, appellant "dragged [Chavarria] into the river" and pushed her head underwater. Chavarria was underwater for approximately ten seconds before she "was able to grab a hold of [appellant's] jacket and pull [herself] up." At that point, appellant got Chavarria in a headlock, and two police officers who had arrived on the scene were yelling at appellant to let Chavarria go. Eventually, appellant complied.

---

[2]The Fifth DCA's summary of the facts in its September 23, 2008, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the Fifth DCA.

      Cyndi Campbell testified that on April 4, she was driving in her car when she saw appellant and a woman fighting. The woman was crying and "struggling to get away." Campbell drove a short distance before stopping and talking to a man standing outside a house. After speaking to him, she was not sure if he had called the police, so she "drove around" the area and, approximately five minutes later, returned to where she had originally seen the struggle, at which point she "noticed [appellant and the woman] in the alley." Appellant, "had his arm around [the woman's] neck, and she was still struggling to get away." Campbell called 911.

      Campbell continued to drive around, waiting for the police to arrive. She again saw appellant and the woman; they were "walking towards the park." Appellant was "keeping [the woman] ... very close ... to him so she couldn't get away...." Shortly thereafter, Campbell encountered a policeman, and told him where she has last seen appellant and the woman.

      City of Modesto Police Officer Billy Hamilton testified that on April 4, while responding to a report of a man and a woman fighting, he made contact with a witness who told him she had seen the "suspect and victim walking near the entrance of East La Loma Park...." The officer drove into the park and saw appellant and a woman. Appellant "had ... his arm around her neck in like a headlock position," and he was walking quickly and was pulling her along." Appellant looked back, saw the officer and, still holding the woman in a headlock, began running, dragging the woman.

      Officer Hamilton lost sight of appellant and the woman for approximately three seconds as the pair went over the creek embankment. The officer stopped his car, got out and went down to the creek. As he got over the embankment, he saw appellant and the woman "in the middle of the creek," in approximately three feet of water. Appellant still had the woman in a headlock, and she was crying hysterically. At that point, appellant "grabbed [the woman] by the head, pushed her under the water and held her there." The woman struggled, and was able to get her head above the water after approximately five to ten seconds. Officer Hamilton "deployed his [taser]" but he was "out of range."

      At that point, the woman was able to stand. Appellant was still holding her in a headlock, and he began "running" up the stream, dragging the woman with him. By this time, Officer Daniel Phillips had arrived on the scene. The two officers gave chase, but lost sight of appellant and the woman for approximately two seconds as appellant dragged the woman behind a bush. When the officers regained sight of the pair, appellant was still holding the woman with his arm around her neck. Officer Hamilton repeatedly ordered appellant to let the woman go and, after approximately one minute, "she was able to get free." Shortly thereafter, the officers took appellant into custody.

## DISCUSSION

I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises

out of the Stanislaus County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.   Standard of Review

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Federal courts review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, in cases where the state court decided an issue on the merits but provided no reasoned decision, federal courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

III.    Review of Claim

Petitioner contends the trial court erred by imposing consecutive sentences on counts three and five rather than stayed sentences. Respondent contends the claim is procedurally barred and fails to present a federal basis.

Petitioner presented this claim on direct appeal to the Fifth DCA. The appellate court granted relief in part and denied relief in part, as follows:

> As indicated above, appellant contends the spousal battery (count 3) and the criminal threat (count 5) were "incidental to the kidnapping and/or the attempted murder," and therefore the court erred in failing to stay execution of sentence on the count 3 and count 5 offenses pursuant to section 654.
>
> Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Thus, under the plain language of the statute multiple punishment may not be imposed for a single "act or omission." ( *Ibid*.) But in addition, section 654 also prohibits multiple punishment for multiple acts which comprise an "indivisible course of conduct." *People v. Hester* (2000) 22 Cal.4th 290, 294.)
>
> A course of conduct is "indivisible" if the defendant acts with "a single intent and objective." (*In re Jose P.* (2003) 106 Cal.App.4th 458, 469.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "The question of whether the defendant held multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal." (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1466.) The court's findings may be either expressed or implied from the court's ruling. (*People v. McCoy* (1992) 9 Cal.App.4th 1578, 1585.)
>
> "[T]he fact certain acts are proximate in time is not determinative in finding an indivisible course of conduct. Multiple criminal objectives may divide those acts occurring closely together in time." (*People v. Bradley* (1993) 15 Cal.App.4th 1144,

6

1157, disapproved on another point in *People v. Rayford* (1994) 9 Cal.4th 1, 7.) Thus, as our Supreme Court noted in *People v. Latimer* (1993) 5 Cal.4th 1203, "Some [decisions] have narrowly interpreted the length of time the defendant had a specific objective, and thereby found similar *consecutive* objectives permitting multiple punishment." (*Id.* at pp. 1211-1212.) The court in *Latimer* cited *People v. Trotter* (1992) 7 Cal.App.4th 363 as an example. (*People v. Latimer, supra,* at p. 1212.)

In *Trotter,* the defendant was punished separately for two of three gunshots fired at a pursuing officer. On appeal, the court rejected the defendant's claim of a single objective-"to avoid apprehension"-concluding that it was proper to punish him separately for the first two shots, which were fired "within one minute" of each other. (*People v. Trotter, supra,* 7 Cal.App.4th at p. 366.) The court observed: "Defendant's conduct became more egregious with each successive shot. Each shot posed a separate and distinct risk to [the officer] and nearby freeway drivers. To find section 654 applicable to these facts would violate the very purpose for the statute's existence" (*id.* at p. 368), which is " 'to insure that a defendant's punishment will be commensurate with his culpability' " (*id.* at p. 367).

"Furthermore, [ *Trotter* ] was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable. '[D]efendant should ... not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his ... assaultive behavior.' "(*People v. Trotter, supra,* 7 Cal.App.4th at p. 368, citing *People v. Harrison, supra,* 48 Cal.3d at p. 338.) Finally, the court also observed that "even under the long recognized 'intent and objective' test, each shot evinced a separate intent to do violence...." ( *People v. Trotter, supra,* at p. 368.)

We first consider appellant's claim that the spousal battery was incident to the attempted murder. Appellant's course of conduct is readily divisible into two parts. The first phase occurred when appellant dragged the victim from the side of the house to the alley, forced her to the ground and choked her. The second phase began when appellant began dragging the victim away from the alley and into the park.

As the parties agree, the spousal battery could have occurred at multiple points, the earliest being when appellant choked the victim in the alley behind the house. Although this offense was temporally close to the attempted murder, the two offenses nevertheless "were separated by periods of time during which reflection was possible." (*People v. Trotter, supra,* 7 Cal.App.4th at p. 368.) Appellant had halted his progress toward the spot where he eventually attempted to murder the victim. He had the " 'opportunity to walk away,' " but instead he " 'resumed his ... assaultive behavior .' " ( *Ibid.*) In our view, the attempted murder and the spousal battery appellant committed behind the house were separate volitional acts. Moreover, appellant's conduct became more egregious when he resumed his assaultive conduct after stopping just long enough to choke the victim into unconsciousness. On this record, substantial evidence supports the court's implied finding that appellant acted with separate intents and objectives in the two phases of his course of conduct.

We also reject appellant's contention that section 654 prohibited punishment on the spousal abuse count because that offense was incidental to the kidnapping. Appellant was not punished for the kidnapping; as indicated above, the court stayed execution of sentence on that offense pursuant to section 654. Therefore, imposition of sentence on the spousal battery count could not constitute multiple punishment for the same act vis-à-vis the kidnapping.

7

  The imposition of sentence on both the count 5 criminal threat and the attempted murder stands on a different footing. Appellant committed the count 5 offense when, as he dragged the victim into the park, he told her not to scream or try to run away, or else he would stab her. The record demonstrates appellant made his threat in order to enable him to continue with the kidnapping and, eventually, murder her. There is no substantial evidence that appellant acted with any other objective in making the threat. Therefore, imposition of sentence on both the criminal threat and the attempted murder violated section 654.

  The People argue that remand is necessary. They point out that although the court imposed, and failed to stay execution of, sentence on count 5, prior to imposing sentence the court stated, "the threat to kill is ... 654 to the ... attempted murder." The People argue that because "the court's ... statements were contradictory," "[i]t is not clear whether the court misspoke when it said the criminal threat related to count 5 was '654,' or whether it mistakenly imposed the consecutive term for the sentence when it meant to stay the sentence under section 654." However, because, as demonstrated above, there was no substantial evidence that appellant acted with separate intents and objectives in making the criminal threat and committing the attempted murder, remand would serve no purpose. (Cf. *People v. Blessing* (1979) 94 Cal.App.3d 835, 839 [no remand, despite sentencing error, where remand would be "idle gesture[ ]"].)

  Where multiple punishments have been improperly imposed, the proper procedure is for the reviewing court to modify the sentence to stay the sentence imposed for the lesser term. *People v. Butler* (1996) 43 Cal.App.4th 1224, 1248.) Accordingly, we will modify appellant's sentence by staying the eight-month term imposed on count 5.

Petitioner did not timely file a petition for review with the California Supreme Court. Therefore, judgment became final 40 days after the appellate court issued its opinion. Cal. Rules of Court, rule 8.500(e). Nearly seven months later, Petitioner filed a habeas petition in the California Supreme Court. The petition was denied as untimely pursuant to In re Waltreus, 62 Cal.2d 218 (1965). Respondent correctly argues that Petitioner is procedurally barred from raising this claim.

A federal court will not review a claim if the state court has denied relief of that claim pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989).This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32. In California, where a claim is raised on direct appeal but the petitioner fails to file a timely petition for review, the claim is procedurally defaulted and the petitioner is foreclosed from raising the claim in a petition for writ of habeas corpus. Waltreus, 62 Cal.2d at 225. A Waltreus citation indicates that the claim was defaulted under Cal. Rules of Court 8.500(e)(1) (formerly Rule 28(b)). See Forrest v. Vasquez, 75 F.3d 562, 563-64 (9th

Cir.1996). As stated above, the state habeas petition was denied with citation to Waltreus indicating Petitioner had defaulted his claim by failing to present it on direct review. In Forrest, the Ninth Circuit found Cal. Rules of Court 8.500(e)(1) (then Rule 28(b)) was an adequate and independent state procedural ground barring federal review. 75 F.3d at 564.

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750. In this case, Petitioner fails to do so. Therefore, the claim must be denied as procedurally defaulted.

In any case, the claim is not cognizable. As noted by Respondent, the appellate court already granted the relief Petitioner sought with respect to count five; therefore, there is no factual basis for that portion of his claim. As to his claim concerning count three, Petitioner does not allege a violation of the Constitution or federal law. His claim only involves an alleged state sentencing error, and generally, issues of state law are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Moreover, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).

In sum, Petitioner is procedurally barred from bringing his claim, and in any event, the claim is not cognizable. Therefore, the petition will be DENIED.

IV.   Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining

whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

>    (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
>    (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
>    (c)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>       (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>       (B) the final order in a proceeding under section 2255.
>
>    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>    (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

///

///

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2) The Clerk of Court is DIRECTED to enter judgment and close the case; and

3) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:    **June 24, 2010**                    /s/ **Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE